McMurry v. Mobley et al.

2. VENDOR AND VENDEE: Suit for purchase-money: Tender of deed.

---

## McMurry v. Mobley et al.

39  309
77   34

TRUST: CONSTRUCTIVE: *Purchase by agent in his own name: How proved.*
A purchase by an agent in his own name, in matters within the purposes of his agency, creates a constructive trust for the principal. Such a trust is not within the statute of frauds, but may be proven by parol.

APPEAL from *Yell* Circuit Court.

Hon. R. C. NEWTON, Special Judge.

*J. T. Harrison*, for appellant:

1. Parol proof to establish a trust like this is unquestioned. *1 John. Ch.*, *583*; *2 ib.*, *406–7–8*; *Story Eq.*, *1210–11*; *1 Greenl. Ev.*, *266*; *4 Kent Com.*, *305*; *9 Ark.*, *518*; *13 ib.*, *187*; *11 ib.*, *82*; *15 ib.*, *315*. A resulting trust not within statute of frauds. *Gantt's Digest*, *sec.*, *2963*; *2 John. Ch.*, *408–9–10–11–12–13*; *Dyer v. Dyer*, *Lead. Cas. in Eq.*, *vol. 1*, *138–40–1*, and notes; *1 Wend.*, *626–648–9*.

2. Where land is purchased and an agent takes the deed in his own name, he holds in trust for whoever furnished the purchase-money. *Carter v. Reagan*, *23 Ark.*, *74*; *29 Ark.*, *226*. As to trusts generally, see *Story Eq.*, *sec. 1201–1220–1220a*, note *1–2*, *sec. 529*; *1 John. Ch.*, *409*; *30 Ark.*, *249*; *26 ib.*, *444*; *27 Ark.*, *160*.

3. The statute of limitation does not apply. (*20 Ark.*, *197–8–200*; *22 ib.*, *1–6*; *1 Story, Eq.*, *p. 591*; *2 Stanton's Kentucky Digest*, *p. 1227*, *sec. 1200–1 and p. 1017*, *sec. 3*.

4. The taxes claimed are not properly plead by cross-bill. The land cultivated was worth, in rent, the taxes. The tax receipts embrace other lands, etc.

EAKIN, J. Appellant brought this suit against the widow, heirs, and administrator of Herbert Mobley, to establish a trust, and obtain a legal title to certain lands in Arkansas. Upon the hearing the cause was dismissed for want of equity, and McMurry appeals.

He claims as vendee of W. K. Dial. The facts developed by the pleadings and evidence, appear substantially as follows: In the year 1860 Dial and Rogers, citizens of Tennessee, being in Arkansas, entered into negotiations with Bailey and Ray for the purchase of a tract of land in Yell County, but returned without completing the purchase. They afterwards concluded to consummate the trade, and Rogers returned to Arkansas, in company with Mob-

ley, for that purpose, and to make their residence here, Dial remaining at his old home. Dial had confidence in Mobley; made him his agent, and placed money in his hands to complete the purchase in conlemplation, on Dial's behalf, in connection with Rogers. The sum then and afterwards furnished to Mobley, to pay for Dial's interest, amounted to $460, and was all that was demanded as requisite for the purpose. The verbal agreement between Dial and Rogers was, that each was to have half the land in area, but as Rogers in fact got the more valuable part, his proportion of the purchase-money would be more.

The purchase was made and the deed was executed for convenience, as is alleged, and seems probable, to Rogers and Mobley, instead of to Rogers and Dial, as was the intention, and as Dial afterwards believed. Mobley seems to have been nearly connected with Dial and in his confidence; and appears to have fairly intended throughout. The lands in the conveyance were described as the east half of the southwest quarter, and southwest quarter of southeast quarter, and southeast quarter of the northwest quarter, and northwest quarter of southwest quarter, in section 14; also the northeast quarter of the *southwest* quarter, and the northwest quarter of the northeast quarter in section 23, all in township 5 north, of range 25 west. It is obvious from other descriptions and the evidence, viewed in connection with the relative situation of the tracts, and, if platted, that the northeast quarter of the *northwest* quarter of section 23, was intended, instead of the " northeast quarter of the southwest quarter." The lands were paid for in full by Rogers and Mobley, the latter using Dial's money as his agent. That is, except as to one of the forty acre tracts described, which Mobley perhaps paid for himself, and which, by an agreement with Dial, he was to have for a residence, his other lands being in a

bottom.  This was the southwest quarter of the southeast quarter of section 14, upon which Mobley afterwards resided.

On the twenty-ninth of March, 1862, in a somewhat awkward attempt at a partition, in which Mobley acted both for himself and as Dial's agent, Rogers conveyed to Mobley all the lands in the deed from Bailey and Ray, adding this : " and the whole amount of it being deed in common, and a division being desired, the said James M. Rogers conveys all his interest in the four south forty and fraction to a line agreed upon, containing 172 acres." It seems reasonably plain what was intended.  If we plat the lands by the Government plan of surveys, of which we take judicial notice, it will appear that the four south forty acre tracts and a contiguous fraction sufficient to make up 172 acres would include, besides what is conceded to be Mobley's own, and supposing the correction of the error above indicated, the precise lands claimed in the bill.  The rest was left to Rogers.  Mobley built upon his own forty, to wit, the southwest of the southeast of 14, and sacredly, through life, regarded and protected the other lands conveyed to him as the property of Dial, until they were purchased by McMurry of Dial in Tennessee in 1865, and afterwards as the complainant's.  The oral proof as to this is overwhelming, as well as the direct identification of the lands in the complaint with those of which Mobley always repudiated the ownership.  The latter fact is well proved by the brother of Mobley, as well as by many remarks of other witnesses fixing their locality.  Mobley died in 1872.

Meanwhile, in Tennessee, Dial had sold these lands to one Freeman, who transferred his purchase to complainant.  On the seventeenth of August, 1865, still supposing that the original deed had been executed to himself and

Rogers jointly, Dial, referring to the deed from Bailey and Ray, conveyed to complainant an undivided half of the tract. Afterwards when advised of the partition, but still supposing it had been made in his own name, he, in April, 1877, and shortly afterwards, by another deed, to cure an error in acknowledgment, conveyed to complainant the southeast quarter of the southwest quarter, and 13 acres on the south side of the northeast quarter of the southwest quarter of section 14; also the northeast quarter of the northwest quarter and the northwest quarter of the northeast quarter of section 23, in said township and range. He could only convey twelve acres of the fraction, but in other respects this description agrees with the tract which Mobley always professed belonged to Dial, and to McMurry after the purchase. After Mobley's death, the widow and administrator, doubtless unadvised of the circumstances, claimed all the land as the property of Mobley's estate. This suit was begun in 1876.

It is a well recognized principle, that a purchase by an agent in his own name, in matters within the purposes of his agency, creates a constructive trust for the principal. See *Bispham's Equity, sec. 93, citing cases.* This principle has been several times recognized and applied by this court.

*TRUST: CONSTRUCTIVE: Purchase by agent in his own name:*

These trusts may be established by parol testimony, and from their nature, in most cases, must be. They are not within the statute of frauds. That applies to trusts claimed to have been created or declared by the parties, but not to implied trusts, resulting or constructive. They are imposed by the law from facts and circumstances, independently of the will, and often against the protestations of the party to be affected. These facts and circumstances may be proved as in other cases, by parol. It may be shown, for instance, that an absolute deed was intended as a mortgage. *Gantt's Digest, secs. 2962, 2963.*

*How proved.*

McMurry v. Mobley et al.

The declarations of Mobley in his lifetime would not be sufficient therefore to create the trust, if he had come by the lands in his own right, free of the confidential relations of agency.   But it was constructively imposed upon him by his agency to purchase, and by the use of his principal's money for the purpose, and his acts and declarations were admissible not only in corroboration of the facts from which the trust arose, and as confessions of its continued existence, the facts appearing *aliunde*, but to repel the idea of adverse possession.

Of the facts there can be no doubt, and we therefore think the Chancellor should have declared the trust and afforded appropriate relief.   To this end there must be an account of taxes paid by Mobley in his lifetime, and by his widow, heirs, or administrators, since, crediting any sums furnished for the purpose.

Whatever balance may be found against the complainant must be declared a lien upon the land.

For error in dismissing the cause for want of equity shown, let the decree be reversed, and the cause be remanded, with directions to the court below to enter a decree in accordance with this opinion, and for further proceedings in accordance with the principles and practice in equity, to ascertain and enforce any lien which may be proper for taxes; and to adjust the costs in the court below. The costs of this court to be paid by appellees, but in this, as in all other cases, the costs below are in the sound discretion of the Chancellor.